## IN THE UNITED STATES DISTRICT COURT OF KANSAS

| | | |
|---|---|---|
| **MONICA TAYLOR,** | ) | |
| Plaintiff, | ) | |
| v. | ) | **Case No.:** |
| | ) | |
| **TYSON FOODS INC.** | ) | |
| **SERVICE AT:** | ) | |
| **CT Corporation System** | ) | |
| **112 SW 7ᵗʰ Street, Ste. 3C** | ) | |
| **Topeka, KS 66603** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby designates the Federal Court in Kansas City, Kansas as the place of trial.

## COMPLAINT

COMES NOW Plaintiff Monica Taylor ("Plaintiff"), by and through the undersigned counsel, and states and alleges as follows for her Complaint against the above-named Defendant:

## NATURE OF THE CASE

1.      This is an action for legal and equitable relief to redress the deprivation of Plaintiff's civil rights pursuant to 42 U.S.C. § 2000e, *et seq*. (Title VII), and for retaliation in violation of Title VII.

2.      Plaintiff seeks all relief available under Title VII, including but not limited to, compensatory and punitive damages, costs, and reasonable attorneys' fees.

## PARTIES

3.      Plaintiff is a Missouri citizen residing in Jackson County, Missouri.

4.      Defendant Tyson Foods Inc. ("Tyson") is headquartered in Arkansas and a Delaware entity.

5.      At all times mentioned herein, each of Defendant's employees referenced in this Complaint were agents, servants and employees of Defendant.

6.      Tyson is an entity and thus incapable of acting on its own behalf and therefore acts through agents. It is liable for the conduct of its agents, including but not limited to the individuals named herein, acting within the course and scope of their agency, its own negligence, the acts of its agents which it ratifies, injuries incurred by agents' performance of its non-delegable duties, and acts its agents take by virtue of their agency or employment with Tyson.

## JURISDICTION AND VENUE

7.      Plaintiff submits to this Court's jurisdiction for the adjudication of his Complaint.

8.      This Court has personal jurisdiction over Tyson in that at all relevant times, Tyson transacted business in the State of Kansas and committed the acts and omissions alleged herein in the State of Kansas within this District, and otherwise has a continuous and systematic presence in this District.

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 because Plaintiff's claims arise under federal law and involve a substantial federal question.

10.      Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District Court's territorial jurisdiction.

## ADMINISTRATIVE PROCEEDINGS

11.      On or about May 19, 2022, Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission. A copy is attached hereto as **Exhibit A and is incorporated herein by reference.**

12.     On July 17, 2023, the Equal Employment Opportunity Commission issued to Plaintiff a Notice of Right to Sue. A copy is attached hereto as **Exhibit B and is incorporated herein by reference**.

## FACTUAL ALLEGATIONS

13.     Plaintiff is an African American female.

14.     Plaintiff began her employment with Tyson on or about October 19, 2020.

15.     Plaintiff's last position was as a picker and she also performed sanitation duties, among other things.

16.     In and around August 2021, Tyson announced it would require employees to be vaccinated against the Covid-19 virus.

17.     Tyson offered a leave of absence Plus (LOA+) as a "reasonable accommodation."

18.     This is an unpaid non-job protected leave.

19.     Plaintiff is a Jehovah's witness that believes that her faith prohibited her from receiving the Covid-19 vaccination.

20.     Plaintiff has, and had, a sincerely held religious belief that conflicted with her employer's vaccination requirement.

21.     During her employment, Plaintiff requested religious accommodation documents from human resources.

22.     Ultimately, Plaintiff returned the documentation to the human resources department, thereby, notifying Tyson of her religious beliefs and requesting a religious accommodation to Tyson's vaccination mandate.

23.     On October 25, 2021, via written correspondence, Plaintiff was notified that she would be placed on the LOA+ as a "reasonable accommodation," beginning on November 2, 2021.

24.     This correspondence also indicated Tyson would reach out to Plaintiff "as soon as administratively possible with any additional information . . . on the availability of alternative accommodation."

25.     Consequently, on or about November 2, 2021, Plaintiff's employment was effectively terminated.

26.     On November 23, 2021, the State of Kansas enacted HB 2001 requiring exemptions for employees and applicants who submitted a written waiver to the employer, as it relates to their sincerely held religious beliefs.

27.     Further, HB 2001 requires employers to grant sincerely held religious belief exemptions requested in accordance with its provisions, "without inquiring as to the sincerity of the request."

28.     In spite of HB 2001 and its own correspondence from October 25, 2021, Tyson never notified Plaintiff of the exemptions contained in HB 2001.

29.     Consequently, Plaintiff did not return to work.

30.     Nearly one year later, in and around October 2022, Tyson advised Plaintiff that she could return to work.

31.     Notably, upon information and belief, several white managers Tom [last name unknown] and Steve [last name unknown] were notified that they could return to work in and around December 2021, without vaccination.

32.     However, when Plaintiff returned to work in and around November 30, 2022, she was harassed by co-workers.

33.     For example, one of Plaintiff's supervisors Steve [last name unknown] verbally disparaged Plaintiff due to the fact that she did not take the Covid-19 vaccination.

34.     Plaintiff also complained that she believed she was being given unwarranted points—related to attendance—as a result of her religious beliefs.

35.     On December 22, 2022, Blaine [last name unknown], one of Plaintiff's supervisor and a white man, physically assaulted her by grabbing Plaintiff's coat and yanking her backward.

36.     Apparently, Blaine believed that since he previously loaned the jacket to Plaintiff, he had the right to physically put his hands on her.

37.     Notably, Plaintiff has previously offered to pay Blaine for the jacket, however, he refused.

38.     Plaintiff is unaware of any instance where Plaintiff's similarly situated white, male co-workers were treated in a similar manner.

39.     Plaintiff emailed the human resources department, Tammy Torrez, on December 28, 2022, as well as verbally communicated with, human resources, regarding her complaints.

40.     Plaintiff explained the incident and that she felt harassed and humiliated.

41.     Though Plaintiff made complaints, Plaintiff is unaware that there was ever any corrective action regarding Plaintiff's supervisor.

42.     The next day, following Plaintiff's complaints, Tammy Torrez sent Blaine to tell Plaintiff that she wanted to speak with her in Ms. Torrez's office.

43.     During the meeting with Ms. Torrez, Ms. Torrez began to allege that Plaintiff had purportedly exceeded the number of points allowed under Tyson's attendance policy.

44.     Notably, Plaintiff has never previously been told she exceeded the number of points allowed under this policy until after her complaints of harassment.

45.     Ms. Torrez threatened Plaintiff with termination after her complaints.

5

46.     Plaintiff followed up with additional complaints to Ms. Torrez's supervisor Elaina [last name unknown].

47.     Ultimately, Plaintiff was terminated in late February 2023, not long after her complaints of discrimination and harassment, as well as her complaints of assault and battery.

48.     Tyson alleged Plaintiff had exceeded her allowed number of points under its corrective action/attendance policy.

49.     Notably, pursuant to the policy, any points Plaintiff accumulated should have rolled off her record.

50.     Consequently, Plaintiff had actually not accumulated the necessary number of points requiring termination.

51.     Defendant's conduct has caused Plaintiff degradation, humiliation, anxiety and emotional distress.

52.     Defendant's conduct has caused Plaintiff lost wages and benefits; particularly, loss of health, dental and life insurance benefits when Plaintiff was terminated.

53.     Defendant's conduct has caused Plaintiff to lose benefits in the form of 401K compensation.

54.     Defendant's conduct has caused Plaintiff to incur health and medical expenses due to a lack of insurance and/or increased costs of medical insurance, following her termination.

55.     At all times relevant herein, before and after, the individuals responsible for the acts alleged herein were agents, servants, and employees of Defendant and were at all times acting within the scope and course of their agency and employment, or their actions were expressly authorized or ratified by Defendant. Therefore, Defendant is vicariously liable for the individuals' actions.

## COUNT I
## Religious Discrimination/Failure to Accommodate

56.     Plaintiff incorporates by reference all other paragraphs in this Complaint and restates and re-alleges the same.

57.     Title VII prohibits "discriminat[ion] against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

58.     Plaintiff has, and had, a sincerely held religious belief that conflicted with her employer's vaccination requirement.

59.     During her employment, Plaintiff notified Tyson of her religious belief and requested a religious accommodation to Tyson's vaccination mandate.

60.     Plaintiff's requests was denied on or about September 17, 2021.

61.     On or about November 1, 2021, Plaintiff was terminated.

62.     Title VII imposes upon an employer the duty to make reasonable accommodations for the religious observances short of incurring an undue hardship.

63.     Tyson failed to provide Plaintiff with a reasonable accommodation for her religious observances as is required under Title VII, as an unpaid leave is not a reasonable accommodation, but rather a punitive measure taken against employees who choose to exercise their religious rights.

64.     By denying reasonable accommodation and executing punitive measures against employees who refrain from obtaining a COVID-19 vaccine on religious grounds, Tyson discriminated against plaintiff due to her religious beliefs.

65.     Tyson's failure to provide religious accommodations has injured and will continue to injure Plaintiffs by discriminatorily denying them employment and income. 159.

66.     Plaintiff suffered tangible adverse employment actions as a result of Defendant's hostile treatment of Plaintiff, all based on Plaintiff's religious rights.

67.     Defendant's conduct has caused Plaintiff emotional distress, including but not limited to sadness, degradation, humiliation, anger, and upset.

68.     The conduct described herein would have detrimentally affected a reasonable person in Plaintiff's position.

69.     Defendant's treatment of Plaintiff was punitive in nature and was based upon Plaintiff's status as a person regarded as having a physical impairment that substantially limits one or more major life activities.

70.     The actions and conduct set forth herein were outrageous and showed an evil motive, reckless indifference, or conscious disregard for the rights of Plaintiff and therefore Plaintiff is entitled to punitive damages from Defendant, to punish Defendant and to deter others from similar conduct.

71.     At all times mentioned herein, the above referenced perpetrators were employees, supervisors, managers, agents, servant, and employees of Defendant and were at all such time acting within the course and scope of their employment, and/or their actions were expressly authorized by Defendant, thus making Defendant liable for punitive damages under the doctrine of respondeat superior.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant on Count I of this Complaint, for a finding that he was subjected to unlawful discrimination prohibited by 42 USC § 2000e, *et seq* (Title VII), for an award of compensatory and punitive damages, pre-judgment and post-judgment interest as provided by law, for her costs herein expended, for general

and special damages, for her reasonable attorneys' fees, and such other relief as this Court deems just and proper, including equitable relief.

## COUNT II
## Title VII – Retaliation

72.     COMES NOW Plaintiff and for Count II of her Complaint against Defendant states and alleges as follows:

73.     Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

74.     Plaintiff's complaints of racial/sex discrimination and harassment constituted a protected activity.

75.     By reason of Plaintiff's religious discrimination complaints, Defendant retaliated against Plaintiff resulting in Plaintiff being harassed, unfairly disciplined and discharged.

76.     At all times mentioned herein, before and after, the above-mentioned individuals were agents, servants, and employees of Defendant and were at all times acting within the course and scope of their employment.

77.     Defendant's retaliation against Plaintiff was intentional, willful, and malicious, and constituted a willful violation of Plaintiff's federally protected rights.

78.     At the time Defendant retaliated against Plaintiff, Defendant knew that such retaliation was unlawful.

79.     The actions and conduct set forth herein was outrageous and showed evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and therefore Plaintiff is entitled to punitive damages from Defendant to punish and deter Defendant and others from like conduct.

80.     As a direct and proximate cause of the actions and conduct set forth herein, Plaintiff has suffered and will continue to suffer damages and lost wages.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count II of his Complaint, for a finding that he has been subjected to unlawful retaliation provided by 42 U.S.C. §2000e *et seq*.; for an award of compensatory and punitive damages; equitable relief; for her costs expended; for her reasonable attorneys' fees provided by 42 U.S.C. §2000e and for such other relief as this Court deems just and proper.

## COUNT III
### Violation of 42 U.S.C. §1981

81.     COMES NOW Plaintiff and for Count III of his Complaint against Defendant alleges and states as follows:

82.     Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

83.     On December 22, 2022, Blaine [last name unknown], one of Plaintiff's supervisor and a white man, physically assaulted her by grabbing Plaintiff's coat and yanking her backward.

84.     Apparently, Blaine believed that since he previously loaned the jacket to Plaintiff, he had the right to physically put his hands on her.

85.     Notably, Plaintiff has previously offered to pay Blaine for the jacket, however, he refused.

86.     Plaintiff is unaware of any instance where Plaintiff's similarly situated white, male co-workers were treated in a similar manner.

87.     During the course and scope of Plaintiff's employment, Defendant's representatives, agents and employees, acting within the course and scope of their employment,

engaged in a pattern of practice of intentional discrimination against Plaintiff based on her race in the making and enforcing of a contract.

88.     Defendant through its representatives, agents and employees engaged in these discriminatory practices with malice or reckless indifference to Plaintiff's federally protected rights.

89.     The actions and conduct set forth herein were outrageous and showed evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others, and therefore

90.     Plaintiff is entitled to punitive damages from Defendant to punish Defendant and to deter it and others from like conduct.

91.     As a direct and proximate cause of the actions and conduct set forth herein, Plaintiff has suffered and will continue to suffer damages including lost wages and emotional distress.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count III of her Complaint, for a finding that she has been subjected to unlawful discrimination as prohibited by 42 U.S.C. §1981; for an award of compensatory and punitive damages; equitable relief; for her costs expended; for his reasonable attorneys' fees and expert's fees; and for such other relief as this Court deems just and proper.

**COUNT IV**
**42 U.S.C. §1981 – Retaliation**

92.     COMES NOW Plaintiff and for Count IV of her Complaint against Defendant states and alleges as follows:

93.     Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

94.     On December 22, 2022, Blaine [last name unknown], one of Plaintiff's supervisor and a white man, physically assaulted her by grabbing Plaintiff's coat and yanking her backward.

95.     Apparently, Blaine believed that since he previously loaned the jacket to Plaintiff, he had the right to physically put his hands on her.

96.     Notably, Plaintiff has previously offered to pay Blaine for the jacket, however, he refused.

97.     Plaintiff is unaware of any instance where Plaintiff's similarly situated white, male co-workers were treated in a similar manner.

98.     Plaintiff emailed the human resources department, Tammy Torrez, on December 28, 2022, as well as verbally communicated with, human resources, regarding her complaints.

99.     Plaintiff explained the incident and that she felt harassed and humiliated.

100.    Though Plaintiff made complaints, Plaintiff is unaware that there was ever any corrective action regarding Plaintiff's supervisor.

101.    The next day, following Plaintiff's complaints, Tammy Torrez sent Blaine to tell Plaintiff that she wanted to speak with her in Ms. Torrez's office.

102.    During the meeting with Ms. Torrez, Ms. Torrez began to allege that Plaintiff had purportedly exceeded the number of points allowed under Tyson's attendance policy.

103.    Notably, Plaintiff has never previously been told she exceeded the number of points allowed under this policy until after her complaints of harassment.

104.    Ms. Torrez threatened Plaintiff with termination after her complaints.

105.    Plaintiff's complaints of racial discrimination and harassment constituted a protected activity.

106.    By reason of Plaintiff's complaints, Defendant retaliated against Plaintiff resulting in Plaintiff being harassed, unfairly disciplined and discharged.

107.    At all times mentioned herein, before and after, the above-mentioned individuals were agents, servants, and employees of Defendant and were at all times acting within the course and scope of their employment.

108.    Defendant's retaliation against Plaintiff was intentional, willful, and malicious, and constituted a willful violation of Plaintiff's federally protected rights.

109.    At the time Defendant retaliated against Plaintiff, Defendant knew that such retaliation was unlawful. The actions and conduct set forth herein was outrageous and showed evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and therefore Plaintiff is entitled to punitive damages from Defendant to punish and deter Defendant and others from like conduct.

110.    As a direct and proximate cause of the actions and conduct set forth herein, Plaintiff has suffered and will continue to suffer damages and lost wages.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count IV of his Complaint, for a finding that he has been subjected to unlawful retaliation provided by 42 U.S.C. § 1981, *et seq*,; for an award of compensatory and punitive damages; equitable relief; for his costs expended; for his reasonable attorneys' fees and expert's fee provided by 42 U.S.C. § 1981 and for such other relief as this Court deems just and proper.

## Count V
## Battery

111.    COMES NOW Plaintiff and for Count V of her Complaint against Defendant states and alleges as follows:

112.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

113.     On December 22, 2022, Blaine [last name unknown], one of Plaintiff's supervisor and a white man, physically assaulted her by grabbing Plaintiff's coat and yanking her backward.

114.     Apparently, Blaine believed that since he previously loaned the jacket to Plaintiff, he had the right to physically put his hands on her.

115.     Notably, Plaintiff has previously offered to pay Blaine for the jacket, however, he refused.

116.     As a direct and proximate result of defendant Amara's intentional acts, plaintiff sustained physical pain and mental suffering, including humiliation and indignity.

117.     The actions of Plaintiff's supervisor showed a complete indifference to, and a conscious disregard for the health and safety of plaintiff, thereby justifying an award of punitive damages in this matter.

118.     Defendant was aware of the supervisor's intentional acts.

119.     Defendant failed to discipline the supervisor.

120.     Based on the actions and conduct of defendant condoned the supervisor's actions and thereby ratified the conduct.

WHEREFORE, plaintiff demands judgment against defendants in such amount as shall be fair and reasonable for, among other things, any medical expense, loss of income, plaintiff's pain and suffering, the cost of this action, punitive damages, interest at the highest legal rate, and for such other and further relief as the Court may deem necessary and proper

## Count VI
## Wrongful Termination in Violation of Public Policy - Assault

121.     COMES NOW Plaintiff and for Count VI of her Complaint against Defendant states and alleges as follows:

122.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

123.    Plaintiff's supervisor, a white man, physically assaulted her by grabbing Plaintiff's coat and yanking her backward.

124.    He became upset after he alleged that Plaintiff did not properly acknowledge him when they were returning from break.

125.    The K.S.A. § 21-5412(a), defining the crime of assault in Kansas, defines assault as the act of "knowingly placing another person in reasonable apprehension of immediate bodily harm.".

126.    The K.S.A. § 21-5413(a), defining the crime of battery in Kansas, defines battery as the act of "knowingly or recklessly causing bodily harm to another person; or knowingly causing physical contact with another person when done in a rude, insulting or angry manner."

127.    Plaintiff's acts of reporting potential criminal activity by a fellow employee to her employer were acts protected by the public policy of the State of Kansas, as reflected by the statutes cited herein.

128.    Prior to Plaintiff's discharge, her employer knew of her complaints regarding the supervisor's alleged criminal conduct.

129.    Plaintiff was terminated in retaliation for reporting her complaints regarding Scheider's alleged criminal conduct.

130.    Plaintiff was terminated in violation of public policy.

131.    As a direct result of defendant's decision to terminate Plaintiff's employment in retaliation for her opposition to her supervisor's unlawful conduct, Plaintiff has sustained damages,

including but not limited to economic loss in the form of lost wages and benefits, future lost wages and earnings, and emotional and mental distress.

132.    The actions and conduct set forth herein were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of plaintiff, and therefore plaintiff is entitled to punitive damages from defendant, to punish defendant and to deter defendant and others from like conduct.

133.    At all times mentioned herein, before and after, the above described perpetrators were agents, servants and employees of defendant and were at all such times acting within the scope and course of their agency and employment, and/or the actions were expressly authorized by defendant and/or their actions were ratified by defendant, thus making defendant liable for said actions under the doctrine of respondeat superior.

WHEREFORE, plaintiff prays for judgment against defendant on Count VI of her Petition; for an award of compensatory and punitive damages; for his costs expended; and for such other relief, including equitable relief, as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all counts of the Complaint.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates the United States District Court for the District of Kansas, located in Kansas City, Kansas as the place of trial.

**HOLMAN SCHIAVONE, LLC**

By:    /S/ M. Shaun Stallworth
       M. Shaun Stallworth, KS FED # 78332

16

Holman Schiavone, LLC
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
Phone: 816.283.8738
Fax: 816.283.8739
sstallworth@hslawllc.com

ATTORNEY FOR PLAINTIFF